IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TYRONE DANIEL JOHNSON,

    Petitioner,                    No. CIV S-02-1671 GEB JFM P

    vs.

JOE McGRATH, Warden,

    Respondent.                FINDINGS AND RECOMMENDATIONS

_____/

          Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1999 conviction on charges of being an ex-felon in possession of a firearm, driving under the influence of alcohol or drugs, and driving with a blood alcohol level of .08 or higher, and the sentence of twenty-five years to life in prison imposed thereon under California's Three Strikes Law.[1] Petitioner claims violations of his constitutional rights by ineffective assistance of counsel, unlawful sentencing procedures, prosecutorial misconduct, denial of right to jury trial with respect to his prior convictions, and insufficient evidence to support the conviction.[2]

---

[1] The sentence was based on the convictions and a finding that petitioner had sustained two prior serious felony convictions within the meaning of California Penal Code §§ 667(b)(-(1) and 1170.12. See Exs. C and D to Respondent's Motion to Dismiss, filed February 6, 2003.

[2] Petitioner's original petition, filed August 7, 2002, contains four claims for relief: first, that petitioner received ineffective assistance of trial and appellate counsel; second, that petitioner's due process rights were violated by the absence of a transcript from part of the proceedings on a motion to strike a prior conviction; third, a claim of prosecutorial misconduct;

1

FACTS[3]

    [Petitioner] was charged with being a felon in possession of a firearm, driving under the influence of alcohol, and driving with a blood alcohol level of over .08 percent. The complaint further alleged that [petitioner] had two prior convictions for robbery and a prior driving under the influence conviction.

    On July 23, 1997, at 7:45 p.m., Sacramento Police Officer Michael Iannone pulled over a black Mitsubishi Starion driven by [petitioner]. [Petitioner]'s girlfriend, Billeen Pruett, was in the passenger seat. At that time, they were homeless and all of their possessions were in their car.

    [Petitioner] identified himself to the officer. The officer discovered petitioner had a suspended license. As a result, the officer asked [petitioner] and Pruett to step out of the car.

    While Officer Iannone did not have a distinct recollection of ordering people out of the car, his standard practice would have been to direct the driver to get out of the car and then the passenger. He testified that he was certain that he brought [petitioner] out of the car first and Pruett out later. The officer did not observe Pruett

---

and fourth, violation of his constitutional rights through addition of a prior conviction for use at sentencing that was not proved to the jury. On September 3, 2002, petitioner filed a document styled as an amended petition. Appended to that pleading is a petition for writ of habeas corpus filed in the California Supreme Court that contains three claims for relief: first, a claimed violation of petitioner's Fourth Amendment rights; second, a due process claim substantially similar to that raised in the original petition; and third, a claim of insufficient evidence. Respondent's initial response was a motion to dismiss the petition as a mixed petition containing three claims, one exhausted and two unexhausted. See Respondent's Motion to Dismiss, filed February 6, 2003, at 4, 8 (hereafter Motion to Dismiss). It is apparent that the motion to dismiss was directed at the amended petition, filed September 3, 2002. See Motion to Dismiss, at 4. In a July 16, 2003 order denying the motion to dismiss without prejudice, this action was construed to include the three claims described by respondents and the three other claims from petitioner's original petition. See Order filed July 16, 2003, at 2. In the answer filed August 15, 2003, respondent answered four of the six claims identified in the July 16, 2003 order. See Answer to Petition for Writ of Habeas Corpus, filed August 15, 2003. Respondent did not answer in any way either the Fourth Amendment claim or the claim of insufficient evidence. By order filed April 30, 2007, the court observed that the court intends to recommend denial of petitioner's Fourth Amendment claim on the ground that it is barred by the rule announced in Stone v. Powell, 428 U.S. 465, 494 (1976). Order filed April 30, 2007, at 2-3. In the same order, the court directed respondent to file a supplemental answer addressing the sufficiency of the evidence claim and providing petitioner with an opportunity to file a supplemental traverse. The supplemental briefing was completed on May 31, 2007.

    [3] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Johnson, No. C034325 (September 12, 2001), a copy of which is attached as Exhibit C to Motion to Dismiss.

make any furtive movements while she was in the car.

Officer Iannone next conducted an inventory search of the car. Underneath the driver's front seat, he found a loaded nine millimeter firearm. There were no identifiable fingerprints on the gun. The officer also found some DMV paperwork in the car with the [petitioner]'s name on it.

At trial, Pruett testified the car belonged to [petitioner] and that she never drove it. The parties stipulated that the car was not registered to [petitioner].

At the time they were pulled over, Pruett knew that there was a gun in the car because [petitioner] had told her about it and showed it to her. Pruett said [petitioner] had the gun most of the time she knew him. Pruett testified that the gun was not hers. [Petitioner] and Pruett used the gun for protection because they lived on the streets and down by the river. Pruett also testified that she was being stalked by her ex-boyfriend, who also carried a gun.

The People dismissed the allegation of the prior driving under the influence count. The jury found [petitioner] guilty on all counts and found the allegations concerning the two prior robbery convictions true. On October 14, 1999, the court sentenced [petitioner] to 25 years to life in prison.

Ex. C to Motion to Dismiss, People v. Johnson, slip op. at 2-3.

## ANALYSIS

### I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable

3

1 from a decision of the Supreme Court and nevertheless arrives at different
2 result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406
3 (2000)).

4     Under the "unreasonable application" clause of section 2254(d)(1), a federal
5 habeas court may grant the writ if the state court identifies the correct governing legal principle
6 from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the
7 prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply
8 because that court concludes in its independent judgment that the relevant state-court decision
9 applied clearly established federal law erroneously or incorrectly. Rather, that application must
10 also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166,
11 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal
12 question, is left with a 'firm conviction' that the state court was 'erroneous.'") The
13 court looks to the last reasoned state court decision as the basis for the state court judgment.
14 Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on
15 the merits but provides no reasoning to support its conclusion, a federal
16 habeas court independently reviews the record to determine whether habeas corpus relief is
17 available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).
18 II. Petitioner's Claims
19     A. Ineffective Assistance of Counsel
20     Petitioner's first claim is that he received constitutionally ineffective assistance of
21 counsel.[4] Petitioner claims that he had four separate attorneys, that the evidence against him was
22 "never found to be true," his attorneys refused to investigate the evidence or object thereto, to
23 "impeach office" or to file motions. On September 25, 2000, the Sacramento County Superior
24 Court denied a similar claim of ineffective assistance of counsel for failure to state a prima facie

---

[4] Petitioner refers to ineffective assistance of both trial and appellate counsel, but makes no arguments concerning the performance of his appellate counsel.

4

claim. See Ex. F to Motion to Dismiss. On March 28, 2002, the Sacramento County Superior Court again rejected a claim by petitioner that he had received ineffective assistance of counsel as successive and for failure to state a prima facie case for relief. See Ex. H to Motion to Dismiss. Neither the California Court of Appeal nor the California Supreme Court issued any reasoned opinion on any habeas corpus petition filed by petitioner in either of those courts. See Exs. L-S to Motion to Dismiss.

In order to prevail on his claim of ineffective assistance of counsel, petitioner must show two things, an unreasonable error and prejudice flowing from that error. First petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 688 (1984). The court must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. at 690. "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." United States v. Ferreira-Alameda, 815 F.2d 1251 (9th Cir. 1986).

Second, petitioner must prove prejudice. Strickland at 693. To demonstrate prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. The focus of the prejudice analysis is on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

To support this claim, petitioner relies principally on the transcript of a Marsden hearing, a copy of which is appended to the supplemental traverse filed January 6, 2006.[5] The

---

[5] The date of the Marsden hearing is not identified in the petition. The Clerk's Transcript shows that a Marsden hearing was held in the Sacramento County Superior Court on September

1  transcript contains a number of assertions by petitioner of alleged deficiencies in his trial
2  counsel's performance, as well as counsel's response to petitioner's assertions.  Petitioner has not
3  tendered any evidence to support the assertions of inadequate representation that he made to the
4  state court judge at the <u>Marsden</u> hearing.  Nor has petitioner presented any evidence that the
5  outcome of his trial would have been different had counsel performed differently.
6          For the foregoing reasons, this court finds that the state court's rejection of
7  petitioner's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable
8  application of, controlling principles of federal law.  The court will therefore recommend that the
9  claim be denied.
10          B.  <u>Due Process</u>
11          Petitioner's second claim is that his right to due process was violated by an
12  incomplete transcription of his motion to strike one or both of his prior convictions pursuant to
13  <u>People v. Romero</u>, 13 Cal.4th 497 (1996).  The motion was denied by the trial court.  Petitioner
14  contends that he was denied meaningful appellate review of his three strike sentence because the
15  transcript of the hearing on his motion to strike ended in the middle of an argument by the
16  prosecutor and did not include any findings or statement of reasons by the trial court.
17          This due process claim was rejected by the California Supreme Court by an order
18  filed April 17, 2002, denying a petition for writ of habeas corpus filed by petitioner in the state
19  supreme court on January 17, 2002.  <u>See</u> Ex. Q to Motion to Dismiss.  The order cites to two
20  cases, <u>In re Swain</u>, 34 Cal.2d 300, 304 (1949) and <u>In re Lindley</u>, 29 Cal.2d 709, 723 (1947), but
21  contains no statement of reasons for the denial of the claim.
22          Petitioner's underlying state law claim arising from the same facts was denied on
23  direct appeal.  <u>See</u> Exs. C-E to Motion to Dismiss.  The last reasoned rejection of the claim was

---

7, 1999.  <u>See</u> Clerk's Transcript on Appeal (CT) at 6.  The motion was denied but petitioner's trial counsel was relieved and new counsel appointed.  <u>Id</u>.  The court ordered the transcript of the <u>Marsden</u> hearing sealed.  <u>Id</u>.  Petitioner has attached a copy of the sealed transcript as Exhibit B to his supplemental traverse, filed January 6, 2006.

the decision of the state court of appeal. The state court of appeal denied the claim on the grounds that the documents that do exist in the record "are reliable indications of what happened during the sentencing hearing," and that petitioner's failure to seek a "settled statement" of what transpired at the hearing, in accordance with relevant provisions of the California Rules of Court, required him to "rely on the record that does exist." Ex. C to Motion to Dismiss, People v. Johnson, slip op. at 17-18. The state court of appeal further found the trial court had not abused its discretion in denying petitioner's motion to strike one or more of his prior convictions. Id. at 18-20. To reach its disposition, the court of appeal relied on the probation report, the minutes of the sentencing hearing, and the abstract of judgment. Id. at 18.

The state court of appeal set forth the factors to be considered by a California trial court in weighing whether to strike a prior conviction and noted that under state law a trial court is not required to give reasons for declining to exercise its discretion to strike a prior conviction:

> "A court's discretion to strike prior felony conviction allegations in furtherance of justice is limited. Its exercise must proceed in strict compliance with section 1385(a), and is subject to review for abuse." (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530.) In determining whether to strike a prior, the court must consider "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been conviction of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) "The trial court is not required to state reasons for declining to exercise its discretion under section 1385 [citation]." (*People v. Gillespie* (1997) 60 Cal.App.4th 429, 433.)

Id. at 18-19. The court found that "[t]he clerk's minutes, the abstract of judgment, and the probation report, . . . , demonstrate what transpired at the sentencing hearing and provide us with the ability to provide meaningful appellate review of the [petitioner]'s motion to strike his prior conviction." Ex. C to Motion to Dismiss, People v. Johnson, slip op. at 17. With reference to those parts of the record, the court considered the factors identified in People v. Williams and

concluded that "[petitioner]'s felony record extends over a long time period and is filled with violent crimes and further demonstrates his inability to conform his conduct to societal norms when he was paroled. While his employment, education and military service appear to be promising mitigating factors, we conclude the trial court did not abuse its discretion in denying the [petitioner]'s request to strike his prior convictions." Id. at 20.

To resolve petitioner's federal due process claim, the court considers "'(1) the value of the transcript to the [petitioner] in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript.'" Madera v. Risley, 885 F.2d 646 (9th Cir. 1989) (quoting Britt v. North Carolina, 404 U.S. 226, 227 & n. 2 (1971). "'Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise.'" Madera, at 649 (quoting Mayer v. Chicago, 404 U.S. 189, 195 (1971).

Those parts of the record cited by the state court of appeal contained information concerning all of the factors that must be considered on a motion to strike a prior conviction and provided an opportunity for meaningful appellate review of the denial of that motion. The state court's rejection of this claim was not contrary to applicable principles of federal law. This claim should be denied.

C. Prosecutorial Misconduct

Petitioner's third claim is that his federal constitutional right to due process was violated by several instances of prosecutorial misconduct. Specifically, petitioner contends that (1) the prosecutor "impermissibly trivialized the reasonable doubt standard"; (2) improperly shifted the burden of proof to petitioner during closing argument; (3) improperly commented on petitioner's failure to testify; and (4) improperly commented on the potential penalty for petitioner's crimes. The last reasoned rejection of these claims is the decision of the California

/////

Court of Appeal for the Third Appellate District on petitioner's direct appeal. See Ex. C to Motion to Dismiss, People v. Johnson, slip op. at 3-12.

Respondent contends that petitioner's first three claims of prosecutorial misconduct are barred by the doctrine of procedural default.[6] It is evident to this court that petitioner's claims of prosecutorial misconduct are without merit. For that reason, the court will not reach the complex questions presented by the procedural default defense. See Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (procedural bar issue need not be resolved first if ultimate denial of claim "is a foregone conclusion.").

         1.   Trivializiation of the Reasonable Doubt Standard

Petitioner's first contention is that the prosecutor impermissibly trivialized the reasonable doubt standard by describing it as "the same kind of common sense level you operate on every day" when making assessments of truth in a social setting. Ex. A-4 to Petition for Writ of Habeas Corpus, filed August 7, 2002 (hereafter Petition), at 8. The state court of appeal rejected petitioner's contention the prosecutor's argument constituted misconduct, as follows:

> [T]he prosecutor did not define reasonable doubt to mean common sense. Rather, the prosecutor told the jury that the judge was going to read them an instruction on reasonable doubt and that no one but the judge could define that term. The prosecutor urged the jurors to use their common sense in listening to the evidence and applying the instructions. Following closing arguments, the court read the instruction on the subject fully and properly. Further, the written instructions, including CALJIC No. 2.90, were provided to the jury.

Ex. C to Motion to Dismiss, People v. Johnson, slip op. at 6.

It is neither erroneous nor misconduct to argue that application of the reasonable doubt standard involves common sense. See U.S. v. Ruiz, 462 F.3d 1082, 1086 (9th Cir. 2006)

---

[6] In the answer, respondent indicates that he would "welcome the opportunity" to address the first three contentions in a supplemental brief, as appropriate, were the United States Court of Appeals for the Ninth Circuit to decide en banc that California's contemporaneous objection rule is not an adequate procedural bar. See Answer, at 14 n.7. Although this court does not find the procedural default defense adequate on this record, the court finds no need for further briefing on the merits of any of the prosecutorial misconduct claims at bar.

(quoting reasonable doubt instruction from Ninth Circuit Manual of Model Jury Instructions § 3.5 providing in relevant part "[a] reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation.")  After careful review of the record herein, the court finds that the state appellate court's rejection of this claim was neither contrary to, nor any unreasonable application of, controlling principles of federal law.  This aspect of petitioner's prosecutorial misconduct claim should be denied.

          2.  Shifting Burden of Proof

Petitioner's second contention is that the prosecutor improperly shifted the burden of proof to petitioner during closing argument.  Petitioner contends this occurred when the prosecutor asked,

> "What evidence did we have in this case that this wasn't his gun" (RT 206), then continuing, "That's why I'm saying a reasonable doubt has to be common sensible and based on the facts in this case. And when the defense doesn't present a fact to dispel the belief it's his gun, how can it be reasonable?"  (RT 206-207)  Later, he further argued: "So where in common sense and reason was it explained that this is not his gun?  Nowhere.  You can't get to the reasonable doubt instruction until you have a common sense instruction based on evidence.  We don't have one because there is no evidence it's not his gun."

Ex. A-4 to Petition, at 11.

The state court of appeal rejected this claim on the ground that "[t]he prosecutor merely commenced on the absence of any evidence in the record contradicting Pruett's statement that [petitioner] owned the gun. The prosecutor did not argue that the [petitioner] had the burden of proof on any element."  Ex. C to Motion to Dismiss, People v. Johnson, slip op. at 8.  After review of the record, this court finds that the state court's rejection of this claim is based neither on an unreasonable determination of the facts, nor on an unreasonable application of clearly established federal law.  This aspect of petitioner's prosecutorial misconduct claim should be denied.

/////

### 3. Improper Comment on Petitioner's Failure to Testify

Petitioner's third contention is that the prosecutor's comments on the absence of any evidence to contradict Pruett's statement that petitioner owned the gun "would naturally have been construed by the jury as referring to [petitioner]'s silence," and therefore constituted error under Griffin v. California, 380 U.S. 609 (1965). Ex. A-4 to Petition, at 11-12.

The state court of appeal rejected this claim, finding that the prosecutor's comments were proper comments on "the state of the evidence and the failure of the defense to call witnesses or to offer any evidence in opposition to the People's case." Ex. C to Motion to Dismiss, People v. Johnson, slip op. at 9-10. After review of the record, this court finds that the state court's rejection of this claim is based neither on an unreasonable determination of the facts, nor on an unreasonable application of clearly established federal law. This aspect of petitioner's prosecutorial misconduct claim should be denied.

### 4. Improper Comment on the Potential Penalty for Petitioner's Crimes

Petitioner's fourth and final contention in support of his prosecutorial misconduct claim is that the prosecutor improperly commented on punishment in closing argument. The facts relevant to this claim are set for the in the state court of appeals' opinion as follows:

> During motions in limine, the prosecutor moved to admonish all witnesses not to discuss the penalty [petitioner] might face if convicted. The defense objected to that motion indicating that the [petitioner] would like to testify on this subject. The court granted the motion.
>
> Before she testified, the court admonished Pruett not to comment on the penalty [petitioner] was facing. On direct examination, Pruett testified, without objection, that she had received a telephone call from [petitioner]'s cellmate's girlfriend prior to trial. That person suggested it was a good idea for her to say the gun was hers. In response to the prosecutor's question "What did they say?" Pruett responded: "Um, they said, You wouldn't want to see your old man go to prison for the rest of his life, would you?" Defense counsel elicited this same testimony on cross-examination.
>
> In his closing argument, the prosecutor argued: "You are not to consider penalty or punishment in any way, shape or form. You're not. It's a violation of the law. It's jury misconduct." He then went

> on to discuss the telephone call Pruett received and said "it doesn't take a Ph.D. in rocket scientry [*sic*] to figure out that obviously penalty or punishment is going to be an issue, not for you, but someone else." The prosecutor also argued that someone was trying to get Pruett to change her testimony. The prosecutor also commented that the judge and others will decide the appropriate punishment based on facts that are not before the jury. At this point, defense counsel asked for a sidebar. At the conclusion of the sidebar, the court stated: "I will not allow either of you to proceed further in argument regarding penalty or punishment. I understand where it is, but I'm not, just because that one portion came out, I am not going to change the law. It is not an appropriate consideration for the jury and I intend to indicate that to them, okay?" Thereafter, the prosecutor told the jury "I'm just going to say it is not appropriate for you to consider penalty or punishment. There are lots of good reasons for them. You don't know it. It's just not your duty, it's the Court's."

Ex. C to Motion to Dismiss, People v. Johnson, slip op. at 11-12.

The state court of appeal rejected petitioner's contention that this constituted misconduct, finding that the prosecutor's "conduct was not egregious, nor did it infect the trial with unfairness." Id. at 12. The court further found that the argument tracked a jury instruction given to the jury, and that petitioner had provided no explanation how the argument caused him prejudice. Id.

After review of the record, this court finds that the state court's rejection of this contention is based neither on an unreasonable determination of the facts, nor on an unreasonable application of clearly established federal law. This aspect of petitioner's prosecutorial misconduct claim should be denied.

   D. Denial of Right to Jury Trial With Respect to Prior Convictions

Petitioner's fourth claim for relief is that his constitutional rights were violated by denial of the right to a jury trial on one of or both of the prior convictions. The exact nature of this claim is not entirely clear. In the claim, petitioner cites to a state supreme court petition for writ of habeas corpus, No. S104193, a copy of which is attached as Exhibit A-5 to the original petition filed in this action. See Petition, at 6. In that state petition, petitioner appears to contend

that the evidence presented to the jury was insufficient to prove the prior convictions, and that he was entitled have a jury determine both that he was the individual who committed the prior offenses and that they qualified as strikes. See Exhibit A-5, at 3 (claiming use of 969(b) package and/or abstract of judgment insufficient to prove prior convictions); see also Exhibit R to Motion to Dismiss. The state supreme court petition was denied by order filed April 17, 2002, denying a petition for writ of habeas corpus filed by petitioner in the state supreme court on January 17, 2002. See Ex. Q to Motion to Dismiss. The order cites to two cases, In re Swain, 34 Cal.2d 300, 304 (1949) and In re Lindley, 29 Cal.2d 709, 723 (1947), but contains no statement of reasons for the denial of the claim.

The record reflects that the question of whether petitioner had suffered the prior convictions was tried to the jury. See, e.g., RT at 276-77. To the extent that petitioner contends he was entitled to have the jury, rather than the court, determine whether the prior convictions qualified as strikes, he has failed to state a claim cognizable in this federal habeas corpus action.

"Federal habeas corpus relief is generally unavailable for alleged error in the interpretation or application of state law." Hubbart v. Knapp, 379 F.3d 773, 779 (9th Cir.2004) (citations and internal quotation marks omitted), cert. denied, 543 U.S. 1071, 125 S.Ct. 913, 160 L.Ed.2d 807 (2005). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir.1994) (citations omitted). The question of whether petitioner's prior convictions constituted strikes is a question of state law, and there is no showing that the state courts were fundamentally unfair in their interpretation or application of California's sentencing laws in this case.

In the state supreme court petition cited to in this claim, petitioner cites to Apprendi v. New Jersey, 530 U.S. 466 (2000). See Ex. A-5 at 3. In Apprendi the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

proved beyond a reasonable doubt." <u>Id</u>. at 490. Because <u>Apprendi</u> specifically excepted prior convictions from its holding, there is no clearly established United States Supreme Court law supporting petitioner's claim. <u>See</u> <u>Lewis v. Mayle</u>, 391 F.3d 989, 995 (9th Cir.2004) (stating that habeas relief is only available if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court") (citation omitted).

For the foregoing reasons, petitioner's fourth claim for relief should be denied.

E. <u>Fourth Amendment</u>

In the first claim in the September 3, 2002 amended petition, petitioner claims that the police officers did not have probable cause to search the vehicle and that the search which led to discovery of the gun violated his rights under the Fourth Amendment. Petitioner's Fourth Amendment claim is barred by the rule announced in <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976) (precluding relitigation of Fourth Amendment claims in federal habeas corpus proceedings where state provides " an opportunity for full and fair litigation" of such claims). It should therefore be denied.

F. <u>Sufficiency of the Evidence</u>

Petitioner's final claim is that there was insufficient evidence to support the conviction on the charge of being an ex-felon in possession of a firearm. Petitioner raised a challenge to the sufficiency of evidence to support his convictions in a habeas corpus petition filed in the Sacramento County Superior Court and denied by that court on August 16, 2002. <u>See</u> Ex. J to Motion to Dismiss. The state superior court denied the claim on the ground that it "could have been but was not raised on appeal" and was thus barred by the rule set forth <u>In re Dixon</u>, 41 Cal.2d 756 (1953), which precludes a state habeas petitioner in California "from raising on [state] habeas issues that could have been, but were not, raised on direct appeal." <u>Jackson v. Roe</u>, 425 F.3d 654, 656 n.2 (9th Cir. 2005). Petitioner presented this claim to the California Supreme Court in a petition for writ of habeas corpus filed on August 5, 2002. <u>See</u> Ex. AA to Answer filed

August 15, 2003.  That petition contained several claims in addition to the sufficiency of the evidence challenge.  Id.  The state supreme court denied that petition in an order filed March 19, 2003, citing to seven state supreme court decisions, including In re Dixon.  See id.  The state supreme court did not specifically tie any of the claims raised in the petition to the case citations in its order.  See id.

       Respondent contends that petitioner's claim is barred by the doctrine of procedural default and, in any event, that the claim is without merit.  It is evident to this court that petitioner's claim is without merit.  For that reason, the court will not reach the complex questions presented by the procedural default defense.  See Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (procedural bar issue need not be resolved first if ultimate denial of claim "is a foregone conclusion.")

       When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. 307, 319.  "The question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  Under Jackson, the federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. 307, 324 n.16.

/////

The elements of the crime of being an ex-felon in possession of a firearm in violation of California Penal Code § 12021 are "conviction of a felony and ownership, possession, custody or control of a firearm. [Citations omitted.] Knowledge is also an element of the offense. [Citation omitted.]" People v. Jeffers, 41 Cal.App. 4th 917, 922 (Cal.App.5.Dist. 1996). "The act proscribed by section 12022 [sic], subdivision (a) is possession of a firearm. Therefore, whether possession is actual or constructive, it must be intentional." Id.

Petitioner claims there was no evidence that he intended to possess the firearm found in the car at the time of his arrest.[7] In support of this claim, he contends that the car did not belong to him, the gun did not belong to him, there was no evidence that he ever had physical possession of the gun, the passenger in the car was the only individual to acknowledge ownership of the gun, he did not know the gun was in the car, and the officers did not maintain the proper chain of custody for the weapon. See Amended Petition, filed September 3, 2002, at 10-12; see also Supplemental Traverse, filed May 31, 2007, at 8-9. Petitioner's contentions are inadequate to demonstrate that the evidence offered at trial concerning his possession of the gun was insufficient to support the conviction.

At trial, Billeen Pruett, petitioner's girlfriend at the time of the arrest, testified that the car in which they were riding belonged to petitioner. RT at 49. She also testified that she was aware there was a gun in the car because petitioner had showed it to her, and that petitioner had the gun for "most of the time that" she knew him. Id. at 50-51. Sacramento Police Officer Michael Iannone testified to the circumstances of the traffic stop of the car driven by petitioner, in which Billeen Pruett was a passenger. Id. at 96 et seq. Officer Iannone testified that petitioner was driving the car. Id. at 97. Officer Iannone further testified that he conducted an inventory search of the car and found a loaded firearm under the driver's seat. Id. at 103. Officer Iannone testified that he turned the weapon over to Officer Paul Nasca to be booked into evidence, and

---

[7] Petitioner does not dispute that he was an ex-felon at the time of the offense. See Reporter's Transcript of Proceedings (RT), at 6.

1  Officer Nasca testified that he booked the weapon into evidence in a sealed envelope.  Id. at 105,
2  123.
3         The foregoing testimony was sufficient to convince a rational trier of fact beyond a
4  reasonable doubt that petitioner had violated California Penal Code § 12021 by possessing a
5  firearm as an ex-felon.  This claim for relief should be denied.
6         For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that
7  petitioner's application for a writ of habeas corpus should be denied.
8         These findings and recommendations are submitted to the United States District
9  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
10 days after being served with these findings and recommendations, any party may file written
11 objections with the court and serve a copy on all parties.  Such a document should be captioned
12 "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that
13 failure to file objections within the specified time may waive the right to appeal the District
14 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
15 DATED: February 7, 2008.

UNITED STATES MAGISTRATE JUDGE

12;john1671.157